**CITY OF FORT WORTH, Appellant,**

v.

**Sam ESTES, Appellee.**

No. 15620.

Court of Civil Appeals of Texas.

Fort Worth.

May 13, 1955.

Rehearing Denied June 10, 1955.

R. E. Rouer, S. G. Johndroe, Jr., Robert R. Goodrich, John Gano, G. Gordon Whitman, and June R. Welch, Fort Worth, for appellant.

Samuels, Brown, Herman & Scott, William M. Brown and Ardell M. Young, Fort Worth, for appellee.

RENFRO, Justice.

The City of Fort Worth has appealed from a judgment entered in the County Court at Law in a condemnation suit.

Only three issues were submitted to the jury. In answer to Issue No. 1 the jury found the value of the strip of land taken to be $640. In answer to Issue No. 2 the jury found the market value of appellee's property, exclusive of the strip condemned, to be $10,360 immediately before the condemnation, and the market value of the remainder to be $3,260 after the strip was taken. Based on the verdict, the court entered judgment for appellee for $7,740, being $640 for the strip taken and $7,100 as the difference in the market value of the remainder before and after taking the strip.

By its points of error Nos. 1 and 2 appellant assails the finding of Issue No. 3, the contention being that the answer to No. 3 resulted in a grossly excessive verdict and judgment.

The appellee owned three lots 50 x 100 feet in size. On the lots were situated two frame buildings, containing eleven 2 room apartments. Appellant condemned a strip of land across the three lots containing approximately 3,200 square feet, extending from 11.95 feet to 29.68 feet in appellee's property. On the south and west of the property not taken appellant has constructed fills, or dumps higher than appellee's buildings. The adjacent street will be relocated and raised in elevation. There is testimony that ingress will be difficult and inconvenient. The apartments were served by outdoor pit toilets, which had to be moved from the rear of the lots to points within ten feet of the buildings. There was testimony that because of the embankments, loss of breeze and proximity of the toilets to the buildings, difficulty of ingress and other factors not necessary to mention, the property was useless as rental property, and further, because, after the development was completed, the property would be in a hole, it would have little if any value and would be worthless as industrial property. Five real estate dealers and the city's land agent testified. Their testimony did not vary a great deal as to value before the taking. The witnesses were far apart, however, on the testimony as to the value of the remaining property after the condemnation.

One witness testified the value of the remaining property was as great after the taking as before; another witness testified the buildings were worthless as tenant houses after the condemnation and had a salvage value only, and appellee's remaining property had been decreased in value almost $10,000. Thus, it is seen that the amounts found by the jury were well within the limits fixed by the testimony of the witnesses. As far as the record reveals, all the witnesses on value were competent and experienced real estate men; none were impeached.

The jury saw and heard each of them as they testified, and were in the best position to appraise their credibility and weigh their testimony. Russell Coleman Oil Mill v. San Antonio, U. & G. R. Co., Tex.Civ. App., 37 S.W.2d 165.

Under the testimony, the jury's findings are binding on this court, as they were upon the trial court. Russell Coleman Oil Mill v. San Antonio, U. & G. R. Co., supra; Southwestern Gas & Electric Co. v. Anderson, Tex.Civ.App., 217 S.W.2d 47; Housing Authority of City of Dallas v. Shambry, Tex.Civ.App., 252 S.W.2d 963, refused, n. r. e.

Points one and two are overruled.

Points four, five, six and seven allege jury misconduct in that it is contended one or more jurors stated the correct way to determine the value of the remainder of appellee's property was to determine the amount of rentals appellee had lost and would lose as a result of the taking and road construction; that one or more jurors stated that appellee's lawyers would get thirty per cent of the damages allowed and this thirty per cent was added to the loss of rentals in order to reach a figure of $7,100 damages.

Four of the jurors testified on the motion for new trial.

Findings of the trial court included the following: (a) "Special Issue No. 3 (the only issue of which complaint is made by appellant) was answered by the jury by inserting the figures $3,260.00. The jury ultimately arrived at this answer by agreeing that the remainder of defendant's land not taken, being approximately 11,800 square feet, had a reasonable cash market value of 20¢ per square foot, or a total value of $2,360.00, and the jury likewise ultimately agreed that the improvements on said land not taken had a salvage value of $900.00. The jury then added the value of the land not taken ($2,360.00) to the salvage value of the improvements ($900.00) and thus arrived at the answer to Special Issue No. 3 by inserting the figures $3,-260.00. In this connection, the Court finds that this was the method ultimately used by the jury in arriving at its answer to Special Issue No. 3." (b) After the jury arrived at and recorded their answers to the three Special Issues, they then went back over the answers and discussed each one again, but no changes were made in the answers. (c) "Along near the last of the discussions, one of the jurors mentioned the subject of attorneys' fees, but there was no discussion of such subject." (d) "The jury in arriving at the answers to the three Special Issues * * * did not discuss nor consider the matter of attorneys' fees." (e) "The defendant's recovery was not increased by the jury after the subject of attorneys' fees was mentioned." The trial court concluded as a matter of law that there was no material misconduct of the jury, and it did not appear from the evidence both on the hearing of the motion for new trial and the trial of the cause and from the record as a whole that injury probably resulted to the plaintiff from any alleged misconduct of the jury.

The trial court's findings are supported by the evidence adduced on the hearing of the motion for new trial. All four jurors testified that they discussed and took into consideration all the elements in evidence in arriving at their answer to Issue No. 3. The witness Bennett, for instance, said after considering all ele-

ments they decided $3,260 was the price Mr. Estes could get for the property. The juror Gathings detailed all the elements they took into consideration in figuring the value of the remaining property and summed it up as follows: "We took all the evidence that we had from all different witnesses, the City's witnesses and from your witnesses, and thrashed it out together from that." A study of the statement of facts compels the conclusion that diminution of rental value was only one item considered by the jury in determining the market value of the remaining property. There being an abundance of testimony adduced on the trial concerning diminished rental value because of the condemnation, the jury could properly consider such element in determining market value.

Two jurors testified that some juror mentioned attorneys' fees. One testified he did not hear attorneys' fees mentioned. Another testified that no mention was made of attorneys' fees. All four testified that the question of attorneys' fees was not discussed and that nothing was added to the verdict for attorneys' fees. The witness Bennett testified that attorneys' fees were mentioned at the last of the discussion but that the answers to the issues were not changed.

The mere, passing mention of attorneys' fees, not discussed and not shown to have been considered by the jury, is not sufficient to require a new trial. Wichita Falls & Southern Railroad Co. v. Holbrook, Tex.Civ.App., 50 S.W.2d 428, affirmed, 125 Tex. 184, 78 S.W.2d 938; Dallas Railway Co. v. Hallum, Tex.Civ.App., 276 S.W. 460, refused.

Under Rule 327, Texas Rules of Civil Procedure, regarding motions for new trial because of misconduct of the jury, the party asserting misconduct has the burden not only of proving by a preponderance of the evidence that such misconduct occurred but also a showing that such misconduct probably resulted in injury to him. Barrington v. Duncan, 140 Tex. 510, 169

S.W.2d 462; Crawford v. Detering Co., 150 Tex. 140, 237 S.W.2d 615; Stotts v. Love, Tex.Civ.App., 184 S.W.2d 308, refused, w.m.; Bauguss v. Bauguss, Tex. Civ.App., 186 S.W.2d 384, refused, w.m.; Texas Employers' Insurance Association v. Phillips, Tex.Civ.App., 255 S.W.2d 364, refused, n.r.e.

In the light of the whole record, that is, the evidence heard on the motion for new trial and all the evidence in the main trial, we believe the appellant has failed to show material misconduct of such nature as was calculated to and probably did result in harm to it. We, therefore, are of the opinion the trial court did not abuse his discretion in overruling the motion for new trial on the grounds of jury misconduct.

The last six points of error are based on alleged improper jury argument on the part of one of the attorneys for appellee.

After a careful examination of the entire record, including the reported jury arguments of all counsel in the case, we have concluded that the statements made by appellee's counsel in his argument to the jury were either based on the evidence in the case, deductions reasonably made from the evidence, or were made as legitimate response to argument made by opposing counsel. In our opinion the argument was not improper.

Moreover, appellant did not object to the argument when made, but first complained of the argument on its motion for new trial.

It is only when the probable harm or the resulting prejudice cannot be eliminated or cured by instruction or retraction that a new trial will be awarded in the absence of timely objection. Texas Employers' Insurance Association v. Haywood, Tex.Sup., 266 S.W.2d 856.

Where argument is of such a nature that if objection is made at the time so that counsel can offer an explanation or make such correction as will make such argument proper or harmless, or if the argument is of such a nature that its withdrawal by counsel or instruction by the court to the jury to disregard the same will cure the error and render the effect of the argument harmless, the complaining party must object to such argument and request the court to instruct the jury not to consider same and failure to do so waives the error. Texas & N.O.R. Co. v. Sturgeon, 142 Tex. 222, 177 S.W.2d 264; Wade v. Texas Employers' Insurance Association, 150 Tex. 557, 244 S.W.2d 197.

 Even if some of the statements made by appellee's counsel in his argument to the jury were improper, they were not so plainly prejudicial that their harmful effect, if any, could not be cured. Therefore, if there was any error in the argument, it was waived by failure of appellant to object.

The judgment of the trial court is affirmed.